Exhibit G

-----Original Message-----
From: jon_hellbusch@westlb.com [mailto:jon_hellbusch@westlb.com]
Sent: Monday, December 29, 2008 1:41 PM
To: David Hecht
Subject: Information Request

Hi David,

As we may have briefly discussed several months ago at our meeting in New York, new bank regulatory capital requirements under "Basel II" are in the process of going into effect for WestLB. For our existing transaction, we have until 3/31/09 to comply with these new regulatory capital requirements. Generally speaking, for each transaction currently in our portfolio, we have 3 possible avenues to achieve compliance as described below:

(ii)   Develop a regulator-approved internal model for the asset class being financed:

     While have been working on this project for over 1 year now with consultants and our colleagues in the WestLB "methods" group in Germany, we have had very limited success to date with regulator  approval (and only for common, commodity asset classes such as auto loans, credit card receivables, etc). Based on recent feedback from our methods group in Germany, we do not expect an  approval for any non-traditional or specialized real estate loans.

(iii) Obtain a public credit rating:

1

We have been working on obtaining ratings for a large number of deals which do not qualify under (i) or (iii) herein. However, based on conversations with various rating agencies to date, we do not    believe it to be possible to obtain ratings on our existing Facility at this time.

(iii)   Internally rate each individual loan / obligor with the pool:

While this is a difficult and time-consuming process, this approach may be possible for a significant portion of loans within the financed portfolio. In order to do so, however, the following information    will be needed:

(1) Updated appraisals on all properties securing the loans. The cost of this work would be fully covered by WestLB, but we will need your help with the coordination.

(2) Additional loan-level information for each transaction in the portfolio to be provided to WestLB in accordance with the spreadsheet attached below. Some of this information will either be "not applicable" or perhaps, "not available", but we would request that you just complete to the best of your abilities and make these notations where appropriate.


Once we have all appraisal information and additional data, we will be able to begin internally rating these loans for purposes of determining regulatory bank capital. If we are not successful in meeting one of options above for any given transaction, the result will be a full capital deduction for such transaction based on the current commitment of WestLB.
Therefore, this would mean we would need to set aside $50,000,000 in regulatory capital. As you can imagine, this result is a very bad outcome for WestLB and also results in the potential for "increased costs" to the Borrower pursuant to our Credit Agreement. Therefore, your assistance in this matter towards achieving a satisfactory result would be greatly appreciated. I will plan to follow-up with you during the first week of January to discuss further.

Thanks,

Jon


(See attached file: ServicerDataInput_MasterWorksheet_MFC.xls)

This message is confidential and may be privileged. It is intended solely for the named addressee. If you are not the intended recipient please inform us. Any unauthorised dissemination, distribution or copying hereof is prohibited. As we cannot guarantee the genuineness or completeness of the "information contained in this message, the statements set forth above are not legally binding. In connection therewith, we also refer to the governing regulations of the bank concerning signatory authority published in the standard bank or company signature lists with regard to the legally binding effect of statements made with the intent to obligate the bank.

Diese Nachricht ist vertraulich. Sie ist ausschliesslich fuer den im Adressfeld ausgewiesenen Adressaten bestimmt. Sollten Sie nicht der vorgesehene Empfaenger sein, so bitten wir um eine kurze Nachricht. Jede unbefugte Weiterleitung oder Fertigung einer Kopie ist unzulaessig. Da wir nicht die Echtheit oder Vollstaendigkeit der in dieser Nachricht enthaltenen Informationen garantieren koennen, schliessen wir die rechtliche Verbindlichkeit der vorstehenden Erklaerungen und Aeusserungen aus. Wir verweisen in diesem Zusammenhang auch auf die  fuer uns geltenden Regelungen ueber die Verbindlichkeit von Willenserklaerungen mit verpflichtendem Inhalt, die in den bank- bzw. unternehmensueblichen Unterschriftenverzeichnissen bekannt gemacht werden."

Exhibit H



August 25, 2009

*VIA U.S. MAIL AND FACSIMILE: 201 262 6910*
Metro Funding Corp.
One Kalisa Way, Suite 310
Paramus, NJ 07652

Attn: David Hecht

MFC Funding LLC
One Kalisa Way, Suite 310
Paramus, NJ 07652

Attn: David Hecht

**Re:    $50,000,000 Warehouse Secured Revolving Credit Facility**

Dear Mr. Hecht:

Reference is made to the following agreements:

- that certain Amended and Restated Credit and Security Agreement dated as of July 1, 2008 (the "**Credit Agreement**") by and among MFC Funding LLC as the Borrower (in such capacity, the "**Borrower**"), Wells Fargo Bank National Association, as the Custodian (in such capacity, the "**Custodian**") and WestLB AG, New York Branch, as the Lender (in such capacity, together with its successors and assigns, the "**Lender**") and as the Agent for the Lender (in such capacity, together with its successors and assigns, the "**Agent**");

- that certain Amended and Restated Servicing Agreement dated as of July 1, 2008 (the "**Servicing Agreement**") by and among Metro Funding Corp. as the Servicer (the "**Servicer**"), MFC Funding LLC in the capacity of the Owner (the "**Owner**"), Wells Fargo Bank National Association, as the Back-up Servicer (in such capacity, the "**Back-up Servicer**") and WestLB AG, New York Branch as the Agent for the Lender (in such capacity, together with its successors and assigns, the "**Agent**");

- that certain Deposit Account Control Agreement dated as of February 28, 2007, (the "**DACA**") by and among the Borrower, Agent as the secured party, Valley National Bank (the "**Bank**"), and the Servicer.

Capitalized terms used and not otherwise defined herein shall have the meaning assigned to such term in the Credit Agreement.

We hereby notify you of several breaches of the Servicing Agreement by the Servicer including the following:

1. the Servicer granted interest payment extensions on the Mortgage Loans as specified in Attachment A hereto, in breach of Section 2.02(b) of the Servicing Agreement; and

August 25, 2009
Page 2



2. the Monthly Report for July 2009 was inaccurate in the description of number of Eligible Loans, in breach by the Servicer of Section 2.01(g) of the Servicing Agreement.

We further hereby notify you of several breaches of the Credit Agreement and the DACA by the Borrower including the following:

1. the Borrower's failure to comply with the requirements set forth in Section 2.8 of the Credit Agreement;

2. the Borrower's breach of Section 3.1 of the Credit Agreement, including but not limited to Section 3.1(g) and Section 3.1(t);

3. the Borrower's failure to remit collections and proceeds to the Custodian for deposit in the Collection Account in a timely manner pursuant to Sections 5.1(o) of the Credit Agreement; and

4. the Borrower's failure to comply with the requirements set forth in Section 4(b) of the DACA.

These breaches under the Security Agreement, Credit Agreement and the DACA in turn result in Events of Default under Section 7.1(i) of the Credit Agreement and Unmatured Events of Default under Section 7.1(ii) and (iii) of the Credit Agreement. The Agent has not waived any of its rights or remedies, and nothing in this letter, and no delay or course of dealing on any of its part in exercising any rights or remedies shall be construed as a waiver of any such rights or remedies. The Agent therefore expressly reserves all its rights and remedies under the Servicing Agreement, Credit Agreement and the DACA or any other contract, and as otherwise may be available at law or equity.

Yours sincerely,

WESTLB AG, NEW YORK BRANCH,
as the Agent

By:
Name:     Jon Hellbusch
Title:     Executive Director

By:
Name:
Title:     Phillip Mack
           Director

August 25, 2009
Page 3

West LB

ATTACHMENT A

AOLS Inc.

Sovereign Marine

Spanish Trails LLC

Mar Com

Jennings G'Way Mar LLC

CMARK Builders Inc

1st United Investment Inc

BDM, Inc.

Waterfront Owners

Exhibit I



September 11, 2009

*VIA U.S. MAIL AND FACSIMILE: 201 262 6910*

Metro Funding Corp.
One Kalisa Way, Suite 310
Paramus, NJ 07652

Attn: David Hecht

MFC Funding LLC
One Kalisa Way, Suite 310
Paramus, NJ 07652

Attn: David Hecht

**Re:** **$50,000,000 Warehouse Secured Revolving Credit Facility**

Dear Mr. Hecht:

Reference is made to the following agreements:

- that certain Amended and Restated Credit and Security Agreement dated as of July 1, 2008 (the "**Credit Agreement**") by and among MFC Funding LLC as the Borrower (in such capacity, the "**Borrower**"), Wells Fargo Bank National Association, as the Custodian (in such capacity, the "**Custodian**") and WestLB AG, New York Branch, as the Lender (in such capacity, together with its successors and assigns, the "**Lender**") and as the Agent for the Lender (in such capacity, together with its successors and assigns, the "**Agent**");

- that certain Amended and Restated Servicing Agreement dated as of July 1, 2008 (the "**Servicing Agreement**") by and among Metro Funding Corp. as the Servicer (the "**Servicer**"), MFC Funding LLC in the capacity of the Owner (the "**Owner**"), Wells Fargo Bank National Association, as the Back-up Servicer (in such capacity, the "**Back-up Servicer**") and WestLB AG, New York Branch as the Agent for the Lender (in such capacity, together with its successors and assigns, the "**Agent**");

- that certain Deposit Account Control Agreement dated as of February 28, 2007, (the "**DACA**") by and among the Borrower, Agent as the secured party, Valley National Bank, and the Servicer.

Reference is also made to the letter addressed to you from the Agent dated August 25, 2009 (the "**August Letter**") setting forth breaches of the Credit Agreement, Servicing Agreement and DACA.

Capitalized terms used and not otherwise defined herein shall have the meaning assigned to such term in the Credit Agreement.

September 11, 2009
Page 2



We hereby notify you of each of the following Early Amortization Events:

1.  A Collateral Deficit existed on September 1, 2009 and such Collateral Deficit was not cured within two Business Days.   Such event constitutes an Early Amortization Event pursuant to paragraph (vi) of the definition of Early Amortization Event;

2.  Unmatured Events of Default as set forth in the August Letter.   Such Unmatured Events of Default constitute Early Amortization Events pursuant to paragraph (ix) of the definition of Early Amortization Event;

3.  Servicer Termination Events pursuant to Section 6.01(a)(i) of the Servicing Agreement.   Such Servicer Termination Events constitute Early Amortization Events pursuant to paragraph (viii) of the definition of Servicer Termination Event.

The Agent hereby affirms that the application of Available Funds shall occur in the manner set forth in Section 2.3 of the Credit Agreement, as applicable following the occurrence of an Early Amortization Event; *provided however*, that the Agent hereby gives a limited waiver, which Agent may revoke at any time in its sole discretion, of the effects of the Early Amortization Events under Section 2.3 of the Credit Agreement, *but only* to the extent that such Early Amortization Events would prohibit the Servicing Fee being paid to the Servicer pursuant to clause fourth of Section 2.3 of the Credit Agreement.   For the avoidance of doubt, all other provisions of Section 2.3 shall be enforced.

The Agent has not waived any of its rights or remedies, and nothing in this letter, and no delay or course of dealing on any of its part in exercising any rights or remedies shall be construed as a waiver of any such rights or remedies.   The Agent therefore expressly reserves all its rights and remedies under the Servicing Agreement, Credit Agreement and the DACA or any other contract, and as otherwise may be available at law or equity.

Yours sincerely,

WESTLB AG, NEW YORK BRANCH,
as the Agent

By: _____
Name:   Jon Hellbusch
Title:   Executive Director

By: _____
Name: _____
Title: _____
Phillip Mack
Director

Exhibit J



**Metro Funding**
**CORPORATION**

VIA FACSIMILE 212-789-0035

WESTLB AG, NEW YORK BRANCH
1165 Avenue of the Americas
New York, New York
Attn: Jon Hellbusch

Dear Sirs,

Reference is made to the Servicing Agreement dated as of February 28, 2007, between Metro Funding Corp. ("Metro"), as servicer, MFC Funding, LLC, as owner, Wells Fargo Bank, National Association, as back-up servicer, and WestLB AG, New York Branch, as agent ("WestLB") (as amended, restated or supplemented from time to time, the "Servicing Agreement").

On October 13, 2009, we delivered a Monthly Servicing Report to WestLB in accordance with the requirements of Section 4.01 of the Servicing Agreement (the "Report"). Pursuant to the Servicing Agreement, Section 3.07, Metro is due a servicer fee payable on a monthly basis. In the Report, we requested a payment of the servicer fee for the month of September in the amount of US$59,922.88 and the reimbursement of the property management expenses for the month of September in the amount of USD$67,573.74. Soon after receipt, you requested that Metro remove the property management expenses from the Report and to resubmit it. Metro allowed the Report as submitted, to stand.

WestLB will soon be one month late in making such payment and we are about to issue a servicing report for the month of October. We hereby request that you immediately make payment of the servicer fee and leave the property management expenses issue to be resolved between the parties, in good faith, at a later date.

Best regards,

David Hecht

Exhibit K



VIA FACSIMILE 212-789-0035

WESTLB AG, NEW YORK BRANCH
1165 Avenue of the Americas
New York, New York
Attn: Jon Hellbusch

Dear Jon:

Reference is made to that certain Servicing Agreement dated as of February 28, 2007 (the "**Servicing Agreement**"), by and among Metro Funding Corp. ("**MFC**") as servicer, MFC Funding LLC ("**MFCF**") as owner (collectively, MFC and MFCF as "**Metro**"), Wells Fargo Bank, National Association ("**Wells Fargo**"), as backup servicer (in such capacity, the "**Backup Servicer**"), and WestLB as agent (in such capacity, the "**Agent**") and (ii) that certain Amended and Restated Credit and Security Agreement dated as of July 1, 2008 (as amended from time to time, the "**Credit Agreement**"), by and among MFCF as borrower, WestLB as lender (in such capacity, the "**Lender**"), Wells Fargo, as custodian (the "**Custodian**"), and the Agent.

Upon two business days notice, you have requested Metro to "Acknowledge" the Appointment and Acceptance Agreement appointing Trimont Real Estate Advisors Inc., ("Trimont") as Backup Servicer under the Servicing Agreement (the "Appointment Agreement") and to "Agree" to terminate Wells Fargo as backup servicer under the Servicing Agreement (the "Wells Termination Agreement) (the Wells Termination and the Appointment Agreement, collectively, the "Trimont Agreements").

Although WestLB has expressed its belief that Metro does not need to be a party to the Trimont Agreements, we would like to point out that Metro is a party to the original Servicing Agreement.

Please note that Metro, conceptually, does not have an issue with the appointment of Trimont as backup servicer. However, after weeks of discussions with WestLB in an attempt to resolve our differences in good faith, WestLB has hastily requested the appointment – without articulating a reason – of Trimont.  We understand that Trimont is important as an advisor to WestLB real estate related lending given the complexity and the type of lending programs envisaged by WestLB Asset-Backed Lending group's original strategy in 2007.  However, given that Trimont is already heavily involved with WestLB's real estate holdings, Metro is afraid that such advice will be costly to the portfolio, is a tied-in service, and that Metro should, therefore, have a voice in any increase of liabilities under the Metro credit facility.

In addition, the proposed Acceptance Agreement informs us that the "Parties" WestLB and Trimont are to negotiate an as-of-yet unseen Backup Servicer Agreement within 30 days hereof. Metro believes that it has a right to review and be a party to such an Agreement (Metro was a party to the original Servicing Agreement and due to the potential financial impact on the deal structure and final returns) and such Backup Servicer Agreement should be entered into in a deliberative manner.

**Metro Funding**
CORPORATION

We are also confused as to whether this Backup Servicer Agreement is the same agreement that you mention in your email as being completed this week or whether it is a more specialized services agreement that we have also requested in our previous communication. If so, why has Metro not seen, discussed, or included as a party to either agreement? Consequently, the proposed Acceptance Agreement is not a best practice nor can it be seen as a reasonable request – without discussion of good faith.

To be clear, Metro is happy to review all agreements with Trimont related the current relationship with WestLB and to negotiate in good faith. Please provide the requested documents at your convenience.

Best regards,

David Hecht

Exhibit L

[Metro Funding  Letterhead]

October 16, 2009

## BY HAND, ELECTRONIC MAIL AND FACSIMILE

WESTLB AG, NEW YORK BRANCH
1165 Avenue of the Americas
New York, New York
Attn: Jeff Rogoff (jeff_rogoff@WestLB.com)

**Re: $50,000,000 Warehouse Secured Revolving Credit Facility (the "Facility")**

Dear Mr. Rogoff:

On behalf of Metro Funding Corp. and MFC Funding LLC (collectively, "MFC") reference is made to the following documents:

?     That certain Amended and Restated Credit and Security Agreement dated as of July 1, 2008 (the Credit Agreement") by and among MFC Funding LLC as the Borrower (the "Borrower"), Wells Fargo Bank National Association, as the Custodian (the "Custodian") and West LB AG, New York Branch, as the Lender (together with its successors and assigns, the "Lender") as the Agent for the Lender (together with its successors and assigns, the "Agent"); and,

?     The Deposit Account Control Agreement dated as of February 28, 2007, (the "DACA") by and among the Borrower, Agent as the secured party, and Valley National Bank (the "Bank") and the Servicer; and,

?     The letter dated August 25, 2009 (the "August Letter"), from WestLB AG, New York branch ("WestLB"), as agent, to MFC; and,

?     The letter dated September 11, 2009, from WestLB to MFC (the "September Letter") (collectively, the August Letter and the September Letter are hereafter referred to as the "Letters"); and,

?     The letter dated September 21, 2009, from MFC to Westlb (the "MFC Letter").

Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in the Letters, or if not defined therein, then shall have the meaning ascribed to such terms in the Credit Agreement, DACA, or Servicing Agreement.

Please take note that, throughout the term of the Loan, Metro has acted in good faith with the intent to fully, materially, and properly comply with the Credit Agreement, the DACA and the other related agreements of the Facility.   Metro intends to continue working with WestLB, in good faith, to resolve any dispute it may have with WestLB in connection with the Loan and its other obligations. However, given the lack of any timely and definitive response or resolution regarding the issues formally delineated in (and consistently raised and discussed prior to and throughout the existence of the Facility) the MFC Letter, Metro has been materially limited in its financial, operational, and legal obligations in continuing to service the loan portfolio under the Facility.   Any further delay in addressing the issues raised in the MFC Letter will prejudice all of the parties to the Facility.

Consequently, we are forced to advise WestLB of the following:

?   that MFC Funding LLC, as Borrower, hereby denies the existence of any of the breaches of the Credit Agreement by the Borrower as specified in the August Letter; and,

?   that MFC Funding LLC, as Borrower, hereby denies the existence of any of the breaches of the DACA by MFC Funding LLC as specified in the August Letter; and,

?   that Metro Funding Corp., as Servicer, hereby denies the existence of any of the breaches to the Servicing Agreement as delineated in your August Letter; and

?   that MFC hereby rejects WestLB's assertion of the occurrence or existence of any Early Amortization Event as alleged in the September Letter and the remedies asserted pursuant to such an assertion, in particular, the application of Available Funds under Section 2.3 of the Credit Agreement.

Nothing in this letter is intended to waive any rights and remedies otherwise available to Metro, which Metro reserves the right to pursue at any time without further notice.

Any forbearance or delay by Metro in the exercise of its rights, powers and remedies, are not a waiver or estoppel of Metro's rights, powers, and remedies against WestLB, nor do they constitute nor evidence consent to any determination or finding by WestLB, or any modification to the undertakings agreed to under the Facility agreements.  Metro expressly reserves all of its rights and remedies under the Facility agreements with WestLB and as otherwise may be available at law or equity.

Page 3                                                          October 16, 2009


Also be advised that any past, present or future negotiations or discussions between Metro, on the
one hand, and WestLB, on the other hand, do not constitute a waiver or estoppel of the Metro's
rights, powers and remedies against WestLB, unless and until a written agreement is executed by
Metro and WestLB memorializing same.


                              Sincerely yours,


                              David Hecht

Exhibit M



October 28, 2009

Metro Funding Corp.
MFC Funding LLC
One Kalisa Way, Suite 310
Paramus, New Jersey 07652
Attn.: David Hecht

**Re: $50,000,000 Warehouse Secured Revolving Credit Facility**

Dear Mr. Hecht:

Reference is made to your letter to us dated October 16, 2009 and your two undated letters received by us on October 27, 2009 (the "October Letters"). Capitalized terms used but not otherwise defined herein have the meaning given in the October Letters.

In the October Letters, you denied that (i) the Borrower had breached the Credit Agreement and the DACA, and (ii) the Servicer had breached the Servicing Agreement, in each case without providing any basis for or explanation of such denials. In addition, you also demanded payment of certain servicer fees.

The Agent hereby confirms and reiterates that, notwithstanding the assertions contained in the October Letters, the Events of Default and Early Amortization Events described in its August Letter and September Letter have occurred and are continuing. In addition, the existence of an Early Amortization Event currently restricts any of the Borrower's funds from being applied to pay Servicer Fees while a Collateral Deficit is continuing. The Agent is fully entitled to enforce, and in its discretion may elect to enforce, its rights and remedies with respect to such Events of Default and Early Amortization Events in its sole discretion, and nothing herein, and no delay or course of dealing should, be construed as waiver of any such rights or remedies, all of which are hereby expressly reserved.

Among other Events of Default and Early Amortization Events that have occurred, the monthly reports that have been submitted by the Servicer to the Agent need to be resubmitted to reflect the correct payment status of each loan in the portfolio. For example, during our October 20, 2009 meeting, you indicated that a significant number of the loans serviced by the Servicer that were reported as current were, in fact, delinquent. As per our prior discussion, subject to the receipt of a Servicer Report that accurately states the payment status on each loan, we would be willing to release the Servicer Fee accrued for the September 2009 settlement period from collections currently held in the Collection Account. Please be advised that, unless timely, complete, and accurate reports are submitted in the future, the Agent will have no alternative but to pursue its rights and remedies.



In addition, the release of the Servicer Fee accrued for the September 2009 settlement period will also be contingent upon the appointment of Trimont Real Estate Advisors, Inc. ("Trimont") as Back-Up Servicer. The fees that would be charged for Trimont's services include (i) a $3,250 monthly Back-Up Servicing Fee (as stated in the Appointment & Acceptance Agreement) and (ii) a one-time fee for each property initially evaluated by Trimont, with such fees to be agreed under a separate engagement agreement with Trimont (expected to range from between $8,000 to $12,000 per asset reviewed). Any additional services to be provided by Trimont as Back-Up Servicer (and their associated fees) will be discussed with Metro Funding Corporation prior to engagement and/or amendment to the existing Servicing Agreement. At this point, the Trimont appointment is a precautionary measure, and the Agent does not have a present intention to terminate the Servicing Agreement. If, however, the situation is not regularized, and the Servicer continues to furnish inaccurate and misleading Servicer Reports, we will have no alternative but to enforce our rights, and terminate the Servicing Agreement. Accordingly, you are therefore strongly urged to provide accurate reporting to the Agent. So long as you remain the Servicer, we acknowledge that your consent to the appointment of Trimont is required, but, at the same time, we urge you not to stand in the way of the Trimont appointment.

Lastly, you have received a request to provide the Agent with a formal repurchase offer on the loan secured by the "Phase II Land Trust" property, Please be advised that the Agent is willing to give immediate consideration to any such formal written offer.

All things being equal, it is our desire and preference to continue to work with Metro Funding Corp. as the Servicer. However, we must have confidence that the Agent will receive accurate Servicer Reports and that Metro Funding Corp. will act in good faith with the Agent and Trimont as Back-Up Servicer

Very truly yours,

WESTLB AG, NEW YORK BRANCH, as Agent

By: _____
Name: Jon Hellbusch
Title: Executive Director


By: _____
Name: Roscoe Robbins
Title: Executive Director

Exhibit N



January 22, 2010

Metro Funding Corp.
MFC Funding LLC
One Kalisa Way, Suite 310
Paramus, New Jersey 07652
Attn.: David Hecht

**Re: $50,000,000 Warehouse Secured Revolving Credit Facility**

Dear Mr. Hecht:

Reference is made to that certain (i) Amended and Restated Credit and Security Agreement, dated as of July 1, 2008 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among MFC Funding LLC (the "Borrower"), Wells Fargo Bank, National Association, and WestLB AG, New York Branch, as Lender and Agent (in such capacity, the "Agent"), and (ii) Amended and Restated Servicing Agreement, dated as of July 1, 2008 (as amended, supplemented or otherwise modified from time to time, the "Servicing Agreement"), by and among Metro Funding Corp. (the "Servicer"), the Borrower, Wells Fargo Bank, National Association, as Back-up Servicer and the Agent.  Capitalized terms used but not otherwise defined herein have the meaning given in the Credit Agreement or the Servicing Agreement, as applicable.

The Agent hereby confirms and reiterates that Events of Default and Early Amortization Events have occurred and are continuing.  The existence of an Event of Default or an Early Amortization Event prevents any of the Borrower's funds from being required to be used to pay Servicer Fees while a Collateral Deficit exists.  As a Collateral Deficit currently exists, no funds are required to be used to pay Servicer Fees.  However, the Agent, in its sole discretion, authorized the payment of certain Servicer Fees last week, which payment does not indicate or constitute any agreement to pay any additional Servicer Fees, whether or not they are currently accrued and/or outstanding.  The Agent is fully entitled to enforce, and will enforce, its rights and remedies with respect to such Events of Default and Early Amortization Events in its sole discretion, including, without limitation, the right to refuse to pay any Servicer Fees while a Collateral Deficit exists.

In addition, the Agent hereby notifies the Servicer that a violation of Section 3.03 of the Servicing Agreement has occurred and is continuing as the result of the absence of required insurance with respect to the Mortgaged Property formerly owned by Logic Suites, LLC.  Under Section 6.01(a)(i) of the Servicing Agreement, a Servicer Termination Event will have occurred and be continuing five Business Days after the date hereof unless such violation is cured during such five Business Day period.



The Agent hereby expressly reserves all of its rights and remedies against the Servicer and the Borrower under the Transaction Documents and applicable law and at equity, including, without limitation, the right to refuse to authorize payment of Servicer Fees. The Agent has not waived any of its rights or remedies under the Transaction Documents, any applicable documentation, or law or at equity, and nothing in this letter, nor any delay or course of dealing on the Agent's part in exercising such rights or remedies, shall be construed as waiver of any such rights or remedies.

Very truly yours,

WESTLB AG, NEW YORK BRANCH, as Agent

By:_____
Name:
Title:            Jon Hellbusch
                  Executive Director

By:_____
Name:
Title:    Robert Babbino
          Executive Director

Exhibit O

**Shih, Willard**

---

**From:** Anita Griffith [mailto:griffapp@cableone.net]
**Sent:** Wednesday, February 17, 2010 12:39 PM
**To:** Ilan Ferdman
**Subject:** RE: my partner Leon gave me your contact info

Ilan, I have been contacted by an attorney in Jackson, MS named Will
Simpson, who apparently handled the foreclosure. I sent him a copy of the offer
I had. **This John at Bull Realty told me to act as the**
**Buyers agent and put in a $15,000 commission to be split between me and him.**
**I thought that sounded high but I couldn't figure out why he was handling it in the first**
**Place. Thought you guys had decided to use them instead of us.**

Something is truly bad here but I don't know what. John Deyonker from Bull Realty
Contacted me by phone and asked me about listing info on all of the properties. I
Was under the understanding at that time that he was going to handle the properties.

If this guy is bogus, please let me know and I will gladly cut any ties to him. This is
Not a good situation. I have no idea how he got my name, the information on the property
Or anything. I had to assume that Metro Funding gave it to him, otherwise, how would he
Know anything about me?

Just tell me what to do. I have a cash offer to Metro Funding for $2,500.00 per acre for
50 +/- acres to close as soon as possible. Will send it to you if you like.

---

**From:** Ilan Ferdman [mailto:ilan@metrofundingcorp.com]
**Sent:** Wednesday, February 17, 2010 10:51 AM
**To:** Anita Griffith

2/19/2010

**Subject:** RE: my partner Leon gave me your contact info

Anita, I don't even know who that guy is or why he would ever think he can solicit offers to that property.  Can you dig a bit and find out for me who approached him and what is going on with that?

**Ilan Ferdman** / Vice President
One Kalisa Way, Suite 310
Paramus, NJ 07652
Tel: (201) 262-6360
Fax: (201) 262-6910
**www.metrofundingcorp.com**

 Metro Funding
CORPORATION

PLEASE READ: This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please delete it and all copies from your system, destroy any hard copies and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Metro Funding Corporation and its respective subsidiaries each reserve the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state the views of such entity. Unless otherwise stated, any pricing information in this message is indicative only, is subject to change and does not constitute an offer to deal at any price quoted. Any reference to the terms of executed transactions should be treated as preliminary only and subject to our formal written confirmation.

**From:** Anita Griffith [mailto:griffapp@cableone.net]
**Sent:** Wednesday, February 17, 2010 11:52 AM
**To:** Ilan Ferdman
**Subject:** RE: my partner Leon gave me your contact info

Ilan,  A broker, John Donyaker (sp) at Bull Realty in Atlanta contacted me
Several weeks ago and wanted some information as well.  He indicated that
He was ready to get offers on the 50+/- acres at Boyle .  I forwarded an offer
To him on Monday of this week for $2,500 per acre.

I don't really know what is going on here.  I'll be happy to work on this
In whatever capacity I need to do so but I ASSUMED that when Bull Realty
Called me that they were handling the sale.

I can send you that offer if you like,  I am a little confused now.
I had hoped that I would be listing the property but when contacted by
Him I thought you guys had decided to work through him.  He had also
Asked for my assistance in coming up with asking prices etc.

Best, Anita

**From:** Ilan Ferdman [mailto:ilan@metrofundingcorp.com]
**Sent:** Wednesday, February 17, 2010 8:43 AM
**To:** Anita Griffith
**Subject:** RE: my partner Leon gave me your contact info

Hi again Anita.  I wanted to update you about our progress with the property.  We were awarded all 3 properties recently in a foreclosure auction.  We're now going to start to market them and in the meantime put a management team in place at the hotel.

In order to use you as our listing agent I would like to show the board here that you are the one to

use.  is there anyway you could put a one or two page BPO for me to show to the board on the 3 properties?  Something short.

**Ilan Ferdman** / Vice President
One Kalisa Way, Suite 310
Paramus, NJ 07652
Tel: (201) 262-6360
Fax: (201) 262-6910
**www.metrofundingcorp.com**



Metro Funding
C O R P O R A T I O N

PLEASE READ: This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please delete it and all copies from your system, destroy any hard copies and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Metro Funding Corporation and its respective subsidiaries each reserve the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state the views of such entity. Unless otherwise stated, any pricing information in this message is indicative only, is subject to change and does not constitute an offer to deal at any price quoted. Any reference to the terms of executed transactions should be treated as preliminary only and subject to our formal written confirmation.

**From:** Anita Griffith [mailto:griffapp@cableone.net]
**Sent:** Thursday, January 14, 2010 4:40 PM
**To:** Ilan Ferdman
**Subject:** RE: my partner Leon gave me your contact info

Mr. Ferdman,  I believe the land at Boyle should sell for between $2500 and $3000 per acre.  I think there should be prospects out There for this land.

The shop properties in Cleveland are not as easy to assess.  Those buildings aren't in good condition and that location is Not considered prime .

The hotel/restaurant is also a problem.  It was difficult to Sell the last two times it was on the market.  I believe we are Just going to have to place a price on it an try to get some Offers.  I will get the Chamber of Commerce involved as well And hopefully we can bring some investors in.

I wish I could give you more definitive information but these Properties were not good investments when the lady bought Them in the first place and things have not improved.

I look forward to working with you and will do everything I can To advertise and promote the property in order to bring about a Sale.

**From:** Ilan Ferdman [mailto:ilan@metrofundingcorp.com]
**Sent:** Monday, December 14, 2009 1:14 PM
**To:** griffapp@cableone.net
**Subject:** my partner Leon gave me your contact info

My name is Ilan.  You met my partner leon in Cleveland MS...we took ownership of the Days Inn over there.  I wanted to enlist your services to see if we can help each other.  We will be foreclosing on

the property soon and I would like to be working with someone familiar with the area to try to maximize our sales effort.  Can you please call me when you have a chance so we can discuss some strategy and pricing?

Thanks.

**Ilan Ferdman** / Vice President
One Kalisa Way, Suite 310
Paramus, NJ 07652
Tel: (201) 262-6360
Fax: (201) 262-6910
**www.metrofundingcorp.com**

 Metro Funding CORPORATION

PLEASE READ: This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please delete it and all copies from your system, destroy any hard copies and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Metro Funding Corporation and its respective subsidiaries each reserve the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state the views of such entity. Unless otherwise stated, any pricing information in this message is indicative only, is subject to change and does not constitute an offer to deal at any price quoted. Any reference to the terms of executed transactions should be treated as preliminary only and subject to our formal written confirmation.

2/19/2010

Exhibit P

# Metro Funding Corporation

## Class QuickReport

### Expected Regular Costs

#### 1Q 2010

| Date | Type | Memo/Description | Account | Amount |
|---|---|---|---|---|
| **ABW Inc.** | | | | |
| | | | Insurance | 5,000.00 |
| | | | Receiver | 5,000.00 |
| **Total for ABW Inc.** | | | | **10,000.00** |
| **Architectural Ornamental Landscape** | | | | |
| | | | Taxes | 1,800.00 |
| | | | Association Dues | 790.00 |
| **Total for Architectural Ornamental Landscape** | | | | **2,590.00** |
| **BDM, Inc.** | | | | |
| | | | Taxes | 6,000.00 |
| | | | Insurance | 1,600.00 |
| | | | Utilities | 3,600.00 |
| | | | Management Fee | 13,000.00 |
| | | | Salary | 9,000.00 |
| | | | Food | 7,560.00 |
| | | | Supplies | 2,040.00 |
| **Total for BDM, Inc.** | | | | **42,800.00** |
| **CMARK Builders, Inc.** | | | | |
| | | | Taxes | 10,000.00 |
| | | | Insurance | 7,500.00 |
| | | | liquor license | - |
| **Total for CMARK Builders, Inc.** | | | | **17,500.00** |
| **JC Developers LLC** | | | | |
| | | | Taxes | 15,750.00 |
| | | | Insurance | 2,325.00 |

| | | | |
|---|---|---|---|
| Total for JC Developers LLC | | | 18,075.00 |
| | | | |
| Jennings Gateway Marina | | | |
| | | Taxes | 5,000.00 |
| | | Insurance | 4,000.00 |
| | | Receivership expenses | 2,500.00 |
| | | Repairs/Maintenance | TBD |
| Total for Jennings Gateway Marina | | | 11,500.00 |
| | | | |
| Logic Suites LLC | | | |
| | | Insurance | 5,250.00 |
| | | ImmediateRepairs/Maint | 41,250.00 |
| | | Additional Repairs/Maint | TBD |
| Total for Logic Suites LLC | | | 46,500.00 |
| | | | |
| Phase II Land Trust | | | |
| | | COA FEES | 43,368.60 |
| | | Taxes | 7,700.00 |
| | | Insurance | 4,950.00 |
| Total for Phase II Land Trust | | | 56,018.60 |
| | | | |
| | | | |
| | | TOTAL | 204,983.60 |

Exhibit Q



# Metro Funding
## CORPORATION

### ADVANCE REQUEST

August 31, 2009

WestLB AG, New York Branch
1211 Avenue of the Americas
New York City, NY 10036

Attn: Advances Department

Re:   Advance Request under the Credit and Security Agreement by and among MFC Funding LLC, as borrower
("the Borrower"), WestLB AG, New York Branch, as lender ("the Lender"), WestLB AG, New York
Branch, as agent ("the Agent"), and Wells Fargo Bank, National Association, as custodian (the
"Custodian"), dated as of February 28,2007 (the "Credit and Security Agreement")

Pursuant to Article IV of the Credit and Security Agreement and subject to the conditions under the Credit and
Security Agreement, we hereby request the following Advance:

Amount:               US$   64,504
Advance Date:         September 1, 2009
Borrowing Base:*      US$   44,963,051.70

* As supported by the calculations set forth on the annex to this Advance Request.

Please credit the amount of the Advance to the following account:

Bank:                 Valley National Bank
ABA #:                021 201 383
Account #:            054-14881-2
Reference No.:        09.01.09 Jordan Draw 11

We confirm that, on the date hereof, (i) the representations and warranties set forth in Section 3.1 and Schedule C of
the Credit and Security Agreement are true and correct, (ii) no Collateral Deficit exists and (iii) the other conditions
precedent set forth in Article IV of the Credit and Security Agreement relating to the proposed Advance have been
satisfied.

Sincerely,

MFC FUNDING LLC

David Hecht
President