David Eiseman, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue
New York, New York 10022
Telephone: (212) 907-7330
Facsimile: (212) 754-0330
deiseman@golenbock.com
*Attorneys for Plaintiffs*
*Satori Opportunity Debt Fund LP, and*
*C.S. Charitable Trust*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| METRO FUNDING CORP., SATORI OPPORTUNITY DEBT FUND LP, and C.S. CHARITABLE TRUST,<br><br>Plaintiffs,<br>vs.<br><br>WESTLB AG,<br><br>Defendant. | Civil No. 10 Civ 1382 (CM)<br><br>**DECLARATION OF HAIM VICTOR COHEN SABAN** |

Haim Victor Cohen Saban, pursuant to 28 U.S.C. §1746, hereby declares:

1.      I am the trustee ("Trustee") of the C.S. Charitable Trust (the "Charitable Trust"), which is a plaintiff in this lawsuit. I submit this Declaration in support of the motion for an injunction preliminarily enjoining defendant, WestLB AG ("WestLB"), from, among other things, preventing Metro Funding Corp. ("Metro") from disbursing funds from the Collection Account for the payment of fees and expenses to manage, conserve, insure, protect and operate mortgaged properties.

2.      The Charitable Trust was established in March, 2008. Its purpose is to apply the property vested in the Trustee, and the income from that property, for charitable,

488666.1

scientific or educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code ("IRC"). To that end I, as Trustee, make distributions from the Charitable Trust to charitable organizations conducting qualifying activities under IRC 501(c)(3). All distributions from the Charitable Trust have gone exclusively to such charitable organizations.

3. As Trustee of the Charitable Trust, I make investments to generate income which, in turn, can be donated to charitable organizations. Among these are investments in certain mortgage loans (the "Participant Loans") originated by Metro, and for which WestLB has also provided funding pursuant to its lending relationship with Metro and MFC Funding LLC ("MFC").

4. The Charitable Trust, together with other investors, is a "senior" participant (the "Senior Participants") in certain of these Participant Loans. The Charitable Trust's interest in these loans is reflected in Participation Agreements between the Charitable Trust and Metro (the "Participation Agreements").

5. Pursuant to these agreements, the Charitable Trust purchased interests in the Participant Loans. Upon purchase, the Charitable Trust received an interest in the loans, the real property that secures the loans (the "Collateral") and direct and indirect proceeds of the Collateral. Accordingly, the Charitable Trust has a direct security interest in the properties that are the subject of its Participation Agreements.

6. To date, the Charitable Trust has invested approximately $875,000 in Participant Loans. Of this, $400,000 is invested in a Participant Loan for which the borrower is in foreclosure.

7. WestLB is aware of the investments of the Senior Participants, including the Charitable Trust. In fact, the transaction documents among WestLB, Metro and MFC

provide for the Senior Participants to be paid their share of interest and principal directly from the Lockbox Account, even before the funds are transferred to the Collection Account, from which WestLB receives its share of interest and principal.

8.      These arrangements are set out in Section 2.8 of the Credit Agreement, which states that "any amounts deposited into the Lockbox Bank with respect to any Retained Interest shall be transferred by the Lockbox Bank to [Metro] . . . and shall not constitute Available Funds." The interest of the Senior Participants is a Retained Interest, which is defined in Exhibit 1 of the Credit Agreement as "the Participant's Share of any Participation Mortgage Loan held by [Metro] or a non-Affiliate of [Metro]". Participation Mortgage Loan means "a Mortgage Loan that is secured by a first lien in which . . . [Metro] has granted a non-controlling participation interest in the related Mortgage and Mortgage Note to a non-Affiliated third party . . . pursuant to a Participation Agreement and subsequently transferred such Mortgage Loan and Mortgage Note to [MFC] subject to such Participation Agreement . . ." WestLB, in contrast, is paid its interest and principal only from Available Funds. (Credit Agreement, Section 2.3)

9.      Since the investments by the Charitable Trust in Participant Loans are secured by the Collateral, a significant diminution in the value of the Collateral directly harms the Charitable Trust (as well as the other Senior Participants).

10.     As I understand it, WestLB is preventing Metro from paying the fees and expenses necessary to manage, operate and protect the Collateral properties – including payment for property taxes, insurance and utilities. If Metro cannot pay expenses related to the maintenance and preservation of the Collateral, the properties securing the Charitable Trust's Participation Loans will deteriorate. Given the current economy and real estate market, the

effects of any deterioration are likely to be magnified, resulting in precipitous decline in the value of the Collateral.

11. This threatens imminent, substantial and irreparable harm to the Charitable Trust and to the charitable organizations that are beneficiaries of contributions from the Charitable Trust. The Collateral securing the investments of the Charitable Trust will be jeopardized, making their value difficult to determine and further affecting the amount of contributions the Charitable Trust can make.

12. On behalf of the Charitable Trust, I respectfully request that the Court take the steps necessary to preserve the value of the collateral securing the Charitable Trust's investments in the Participant Loans, by enjoining WestLB from preventing Metro from disbursing funds from the Collection Account for the payment of fees and expenses necessary to maintain the value of the properties securing the loans

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
March 8, 2010

Haim Victor Cohen Saban